————o————

JOSEPH T. LINVILLE, *et al.*, Appellants, *vs.* TILMAN BOHANAN, *et al.*, Respondents.

1. *Counties—Sale of swamp lands under mortgage given to counties for purchase money—Power of county to purchase at mortgage sale.*—Under the act of February 28th, 1855 and the various previous acts relating thereto, the absolute title to the swamp lands in the different counties was vested in them respectively, and where purchased of the county with mortgage to secure the purchase money, the county has the right to buy them in equally as in the case of a pur-

chase by a private mortgagee. Such a purchase is not to be confounded with the purchase of lands—such as state school lands—to which the counties never had any title. (Ray Co. vs. Bently, 49 Mo., 236; Holt Co. vs. Harmon, 59 Mo., 165.)

### *Appeal from Nodaway Circuit Court.*

*Dawson & Edwards*, for Appellants.

At the time the county bought in the lands, there was no law authorizing it to do so, and it possessed no powers not conferred by statute. (Reardon vs. St. Louis Co., 36 Mo., 555; State *in re*, etc., vs. St. Louis, 34 Mo., 546; Ray Co. vs. Bently—expressly affirmed in Holt Co. vs. Harmon, 59 Mo., 165.) And the sale by the County Court, July 12, 1864, and the transfer of Ellis, amount to nothing more than an equitable assignment of the mortgage. (Jackson vs. McGruder, 51 Mo., 55; Johnston vs. Houston, 47 Mo., 227; Robinson vs. Ryan, cited in 3rd. Am. Law Reg., N. S., 58; Pease vs. Pilot Knob Iron Co., 49 Mo., 124; Hunt vs. Hunt, 14 Pick., 374; Jones vs. Mack, 53 Mo., 147; Jackson vs. Minkler, 10 Johns., 479; Jackson vs. Bowen & Neff, 7 Cow., 13; Roberts vs. Jackson, 1 Wend., 473; Honaker vs. Shough, 55 Mo., 472.)

The county, being the mortgagee, could not buy at its own sale so as to cut off the equity of redemption of plaintiffs, even though the sheriff, as agent by appointment in the mortgage, made the sale. (Allen vs. Ransom, 44 Mo., 263; Reddick vs. Gressman, 49 Mo., 389.)

The bond, on its face, recites that it is for school money and the mortgage is drawn under the law relating to the loan of school funds. In Ray County vs. Bently and Holt County vs. Harmon, above cited, this court holds that counties cannot be creditors with respect to the school funds, and cannot therefore buy in the land on the foreclosure of mortgages securing school funds to prevent the loss of such funds. The school lands are vested in the State, in trust for the benefit of the inhabitants of the township in which they are situated. The County Courts are mere trustees with naked powers. They have no trust coupled with an interest.

*Johnston & Jackson*, for Respondent.

I. Appellants contend that the county being the mortgagee could not buy at its own sale. Such sales are not void but voidable. (Thornton vs. Irwin, 43 Mo., 153; Allen vs. Ransom, 44 Mo., 263; Reddick vs. Gressman, 49 Mo., 389.)

II. The mortgage under which the sale was made was a common statutory school fund mortgage, and could be foreclosed upon the order of the County Court, a certified copy of which order had the force and effect of *fi. fa.* upon a judgment of foreclosure by a court of competent jurisdiction. (R. C. 1855, p. 1425, § 30; Jones vs. Mack, 53 Mo., 147.)

III. The sale thereunder was a judicial sale. At such sales mortgagees are allowed to purchase the premises mortgaged. (Thornton vs. Irwin, *supra*.) But in case of purchase by a mortgagee at his own sale, a subsequent sale and conveyance to an innocent purchaser, places the premises beyond the reach of a mortgagor, and beyond the power of a court to help them. (Rutherford vs. Williams, 42 Mo., 19; Smith vs. Williams, 12 Mo., 106; Grove vs. Robards, 36 Mo., 525; Card vs. Lackland, 49 Mo., 451.) And a re-sale by the county would pass to the grantee, the legal title in fee, purged of the evil effects caused by the wrongful act of the county. (Fontaine vs. Boatman's Sav. Inst., 57 Mo., 552; 2 Kent., 282, 11th Ed.; Nicoll vs. N.Y. & E. R. R., 12 N. Y.. [2 Kern.,] 121–129; 2 Prest. Est., 50; 3 Cruise Dig., 495–6; §§ 18, 23, 24; People vs. Moran, *supra*.)

IV. Counties have power to purchase and hold real estate for some purposes. (Wagn. Stat., 441, § 9; 864, § 35; 870, § 21; 1352, § 13; Abernathy vs. Denio, 49 Mo., 468.)

V. If they have such power for any purpose, and abuse or violate the power, it is no concern of the vendor or his heirs. It is a matter between the State and the county. (Grant Corp., 104; 2 Wash. Real Prop., 590–1; 1 *Id.*, 50; Dill. Mun. Corp., § 444; Smith vs. Sheeley, 12 Wall., [U. S.,] 358; Land vs. Coffman, 50 Mo., 243; 2 Kent's Comm., 282; People vs. Moran, 5 Denio, 389; 16 Ohio St., 353; 3 Seld., N. Y., 466.)

VI. In Ray Co. vs. Bentley, (49 Mo. 236) the power of the County Court with reference to the management of Township School Funds (which belong to the State) was involved. In this, the management of swamp land (which belong to the county) is involved. The County Court is not the agent of the county in the management of the township school fund; but the agent of the State. (Ray Co. vs. Bentley, *supra*; Marion Co. vs. Moffitt, 15 Mo., 604–606.)

The County Court is the agent of the county in the management of the swamp lands, the titles being vested in the county. (Barton Co. vs. Walser, *supra*; Abernathy vs. Denio, *supra*.) And the county had the power to hold them and to acquire title to them by rescission of the sale. (Same cases and Wagn. Stat., 870, § 21; 864, § 35.)

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding in the nature of a bill in equity brought by the plaintiffs as heirs of Aaron Linville, deceased, asking permission to redeem certain land upon the payment of the purchase money and interest thereon.

The record discloses the following facts: In 1856, Aaron Linville purchased of the sheriff of Nodaway County, certain swamp land belonging to that county. None of the purchase money was paid. In 1859, the commissioner appointed by the County Court to convey swamp lands, made him a deed, and at the same time, Linville executed to the county a mortgage in the form and with the conditions of a statutory school fund mortgage, conveying the land as security for the payment of the purchase money. Linville died in 1861, and prior to his death he had made two small payments of interest only. The principal debt and the accumulated interest remaining unpaid, in 1863, the County Court ordered the sheriff to sell the land under the mortgage. The land was regularly sold, and at the sale the county became the purchaser at a price considerably less than the amount due. Afterwards the county sold the land to one Coover, under whom defendants claim by a chain of *mesne* conveyances.

The sole question therefore is, whether the county had the right to make the purchase, or whether it was *ultra vires*, and should be treated as a nullity. In the case of Ray County vs. Bently, (49 Mo., 236, followed in Holt County vs. Harmon, Feb'y T.,) it was held that where land was mortgaged to a county to secure a loan of school funds, the county on a foreclosure sale had no power to bid in the land in satisfaction of the debt. In that case the county never had any title. The school lands were vested in the State, in trust for the benefit of the inhabitants of the township in which they were respectively situated. The County Courts in such cases are vested with the management of the fund as trustees, but they act in an administrative capacity, in obedience to the laws of the State, and not by virtue of any power derived from the county. The statute points out the manner in which the funds shall be secured and collected, but no power to purchase by the county is conferred.

But the present case stands in a different situation, and ought to be governed by a different rule. The controversy springs out of a sale of swamp lands of which the county was the owner. After the act of Sept. 28, 1850, granting the swamp lands to this State, the legislature, by various acts donated the lands to the different counties in which the lands were situated, and invested in them the fee. By an act approved February 28, 1855, it was enacted that " the several County Courts of this State are hereby authorized to sell and dispose of the swamp and overflowed lands within their respective counties either with or without draining and reclaiming the same, as in their discretion they may think most conducive to the interest of said counties." (Sess. Acts, 1855, p. 160, 2 R. S. 1855, p. 1006, § 3.) The proceeds arising from the sale of the swamp lands were appropriated to the school fund.

By the legislative enactments above referred to the absolute title to the lands was vested in the counties, to be disposed of in the discretion of the County Courts. The counties were then the proprietors with the right of discretionary disposal,

but by a law of the State they were required to apply the proceeds to a particular purpose. In selling the land they possessed the same powers that owners generally possess under like circumstances, one of the most important of which is the right to buy in the premises to secure the debt. As the county in the first instance owned the land, under the provisions of law, when it purchased it in, it stood in the same attitude that it previously occupied before the sale. It owned the land as does an individual—to again be disposed of. Any one who owns the absolute fee, with the power to sell, must necessarily have the right to buy to secure the purchase money. The sheriff, in making the sale, acted as a trustee. The county was the beneficiary, and as such, had the right to buy, and its title cannot be questioned. The judgment was for the defendants and it should be affirmed.

All the judges concur, except Judge Sherwood, who is absent.