GENERAL AMERICAN LIFE INSURANCE COMPANY, a Corporation, Appellant, v. DUNKLIN COUNTY, a Municipal Corporation and Subdivision of the State.—96 S. W. (2d) 380.

Division Two, August 20, 1936.

*Williams, Nelson & English, Ben R. Swank* and *John A. McAnally* for appellant; *W. G. Bray* of counsel.

290

*Elbert L. Ford* for respondent; *W. L. Proffer* of counsel.

BOHLING, C.—General American Life Insurance Company, a corporation, plaintiff below, appeals from a judgment adjudging title to Lots Three (3) and Six (6), otherwise described as the East half (E½) of the Northwest quarter (N. W.¼) of Section Twenty-eight (28), Township Eighteen (18) North, Range Eight (8) East, lying, being and situate in the County of Dunklin and State of Missouri, in said County of Dunklin, defendant below.

The case was instituted on November 20, 1935, and the pleadings sufficiently present the issues hereinafter discussed.

The agreed statement of facts upon which the case was submitted, insofar as deemed material, establishes the following:

The land involved is a portion of the swamp and overflowed lands within said county of Dunklin, being swamp and overflowed land on September 28, 1850, the date of the original enactment of an Act of Congress entitled "An Act to enable the State of Arkansas and other states to reclaim the 'Swamp Lands' within their limits." [9 Stat. 519, 520; now Secs. 2479, 2480, 2481, R. S. U. S. 1873-1874, 43 U. S. C. A., secs. 982, 983, 984.] The provisions of said act, material here, are as follows:

"Sec. 2479. To enable the several States (but not including the States of Kansas, Nebraska, and Nevada) to construct the necessary levees and drains, to reclaim the swamp and overflowed lands therein—the whole of the swamp and overflowed lands, made unfit thereby for cultivation, and remaining unsold on or after the twenty-eighth day of September, A. D. 1850, are granted and belong to the several States respectively, in which said lands are situated: . . ."

"Sec. 2480. It shall be the duty of the Secretary of the Interior, to make accurate lists and plats of all such lands, and transmit the same to the governors of the several States in which such lands may lie, and at the request of the governor of any State in which said swamp and overflowed lands may be, to cause patents to be issued to said State therefor, conveying to said State the fee-simple of said land. . . ."

By acts of General Assemblies of the State of Missouri provisions were made for the passing of the right, title and interest vested in

the State of Missouri in and to overflowed and swamp lands under said Act of Congress to the several counties in which said lands were respectively situated. [See: Laws 1851, p. 238; Laws 1853, p. 108; Laws 1855, pp. 154, 160; Laws 1857, p. 32; Laws 1868, p. 68; Laws 1869, p. 66.] Plaintiff relies on a patent to the land here involved issued by the county of Dunklin, Missouri, to W. F. Shelton, Jr., under date of July 16, 1903, and subsequent *mesne* conveyances vesting the right, title and interest of said Dunklin County, if any, in plaintiff. Article 3 of Chapter 122, Revised Statutes 1899—the law governing said county patent (now Art. 5 of Chap. 66, Secs. 11128-11164, R. S. 1929, Mo. Stat. Ann., pp. 4873 et seq., referred to, infra) is, insofar as material, to the following effect.

By Section 11128 all of the overflowed and swamp lands granted the State of Missouri by the aforesaid Act of Congress "are hereby donated to the counties in which they may be respectively situated, and shall be the absolute property of such counties for the purposes hereinafter designated. . . ."

By Section 11129 the several county courts are authorized to have said lands drained and reclaimed, etc.

"Sec. 11130. Whenever, in the judgment of said county court, it shall be to the interest of said counties to do so, they shall order the sheriff to sell the same at public vendue. . . . Such lands shall be sold . . . with or without draining or reclaiming the same, as in their discretion they may think most conducive to the interest of their respective counties; . . . *and provided further*, that the county courts of the several counties in this state may, if in their judgment it is deemed advisable, sell any of the swamp or overflowed lands in their counties at private sale, without advertisement as provided in this section, at a price not less than one dollar and twenty-five cents per acre. . . ."

"Sec. 11131. Whenever full payment shall be made for any of said land . . . the county clerk (court) shall cause the clerk of said court to issue to the purchaser . . . a patent for the same. . . ."

"Sec. 11156. In order to convey to the different counties in the State of Missouri a complete title to all the swamp and overflowed lands which have been granted and patented to the State of Missouri . . . (under the aforesaid Act of Congress), the secretary of state is hereby directed to prepare a patent or patents, embracing all the swamp or overflowed lands lying within the limits of the several counties of this State, conveying thereby all the title and interest of the state of Missouri in and to such lands, to the counties in which such lands may lie. . . ."

Section 11158 makes it the duty of the officers named in Section 11156 "to convey by patent or patents, as herein provided, all such

overflowed and swamp lands as may hereafter be patented to the state of Missouri by the government of the United States, to the respective counties in which the same may lie."

The land here involved was not surveyed at the time of the original Government survey for the reason it was covered with water at that time. Under the supervision and direction of the Commissioner of the General Land Office of the Department of the Interior of the United States of America, said land, as well as other swamp and overflowed land, was surveyed by the cadastral surveyor appointed by the Commissioner subsequent to the year 1928, and a plat thereof was filed in the General Land Office, Washington, D. C., September 24, 1930.

On December 28, 1933, the United States of America issued its patent to said lands to the State of Missouri under the aforesaid Act of Congress of September 28, 1850; and on January 24, 1934, the State of Missouri issued its patent to said county of Dunklin for said lands.

All of the conveyances aforementioned were duly recorded.

W. F. Shelton, Jr., paid to said county of Dunklin $1.25 per acre for said land at the time the patent was issued to him, and he and his successors in title paid all taxes levied against said land until the year 1927, when the title came into question.

The county of Dunklin claims title to said land under and by virtue of the patent of January 24, 1934, from the State of Missouri, and the patent of December 28, 1933, from the United States of America to the State of Missouri.

Plaintiff contends that a present beneficial interest in and to said lands passed from the United States to the State of Missouri under said Act of Congress of September 28, 1850, and from the State of Missouri to said county of Dunklin at the time of the original enactment of the laws (Laws 1853, p. 108; Laws 1855, pp. 154, 160; Laws 1868, p. 68—for the development of said law see: Simpson v. Stoddard County, 173 Mo. 421, 444, 73 S. W. 700, 703) constituting Article 3 of Chapter 122, Revised Statutes 1889 (now Art. 5 of Chap. 66, R. S. 1929, insofar as bearing upon the issues here presented), and from said county of Dunklin by its said patent of July 16, 1903, to W. J. Shelton, Jr., and subsequent *mesne* conveyances to plaintiff, vesting in plaintiff an inchoate or equitable title to said land, which beneficial interest and inchoate or equitable title, upon the subsequent listing and platting of said land and the issuance of patent thereto on December 28, 1933, under authority conferred upon the Secretary of the Interior by said Act of Congress, ripened into a legal fee-simple title in the State of Missouri which fee-simple title in turn passed to said county of Dunklin under said patent dated January 24, 1934, of the State of Missouri (See Laws 1869, p. 66;

Sec. 11156 et seq., supra), and under said patent dated July 16, 1903, of said county of Dunklin to W. J. Shelton, Jr., and subsequent *mesne* conveyances transferring said land to plaintiff.; the said transfers causing said fee-simple title to vest in plaintiff and relate back and inure as of September 28, 1850, the date of said Act of Congress.

Defendant contends said Act of Congress of September 28, 1850, did not, *ipso facto,* pass title as a grant *in praesenti;* and with the title remaining in the United States until said land was surveyed and platted (and patented to the State of Missouri and to said county of Dunklin) under the authority conferred by said Act of Congress (and laws of the State of Missouri) no interim conveyance thereof passed any title thereto; and that, therefore, said patent of the county of Dunklin to W. F. Shelton, Jr., was (and remains) wholly void, and if not void, operated as a quitclaim deed and did not convey the after-acquired fee-simple title of said county.

The litigants agree that the Federal law governs the determination of when title passed out of the United States.

In the instant case, prior to the institution of the litigation, the land in question had been listed and platted and a patent therefor issued by the United States of America to the State of Missouri in accord with Section 2480, supra, and by the State of Missouri to the county of Dunklin under the provisions of the applicable Missouri law; and consequently for the purposes of this review it stands officially determined that the land involved is swamp and overflowed land within the provisions of the aforesaid Act of Congress and laws of the State of Missouri.

By the express words of Section 2479, supra, "the whole of the swamp and overflowed lands . . . are granted and belong to the several states respectively, in which said lands are situated." The words *"are granted and belong"* carried the grant and vesting of a beneficial interest *in praesenti* to and in the State of Missouri of the whole of the swamp and overflowed lands within its boundaries; and the subsequent action of the Secretary of the Interior, under Section 2480, supra, in accurately listing and platting said lands and causing patents conveying the fee-simple title thereto to issue to the State of Missouri operated merely to furnish official documentary and record evidence of the identification and title of the State of Missouri in and to said swamp and overflowed lands. Such is the interpretation placed on said Act of September 28, 1850, by the Supreme Court of the United States. Wright v. Roseberry, 121 U. S. 488, 7 Sup. Ct. 985, 30 L. Ed. 1039, states: "The language of the first section of the act indicates a grant *in praesenti* to each state of lands within its limits of the character described" (121 U. S. l. c. 496). "It is plain that the difficulty of identifying the swamp and overflowed lands could not defeat or impair the effect of

the granting clause, by whomsoever such identification was required to be made. *When identified, the title would become perfect as of the date of the act.* The patent would be evidence of such identification and declaratory of the title conveyed" (Ibid., l. c. 500). (Italics ours.) Tubbs v. Wilhoit, 138 U. S. 134, 136, 11 Sup. Ct. 279, 34 L. Ed. 887, 888, states: ". . . the words 'are hereby granted' in the act imported a present grant, and not a promise of one of the future; and that the title to the lands, therefore, passed to the state at once, their identification to be made by the action of the Secretary of the Interior, but when identified the title to relate back to the date of the act." Also, speaking of Wright v. Roseberry, supra: "It is sufficient to observe that the construction thus given to the act is now the accepted law of the country." Rogers Locomotive Mch. Wks. v. American Emmigrant Co., 164 U. S. 559, 17 Sup. Ct. 188, 41 L. Ed. 552, is to the effect that after a state accepts and retains lands under the Railroad Act of 1856 it and its grantees may not thereafter assert a claim to such lands under the Act of 1850. However, what is there said concerning the effect of the Act of 1850 may be noted: "While, therefore, as held in many cases, the act of 1850 was *in praesenti*, and gave an inchoate title, the lands needed to be identified as lands that passed under the act; which being done, and not before, the title became perfect as of the date of the granting act" (164 U. S. 1. c. 570). "It belonged to him (the Secretary of the Interior) primarily to identify all lands that were to go to the State after the Act of 1850. When he made such identification, then, and not before, the State was entitled to a patent and 'on such patent' the fee-simple title vested in the State. The State's title was at the outset an inchoate one and did not become perfect as of the date of the act until a patent was issued." (Ibid., l. c. 574.) Quoted in Little v. Williams, 231 U. S. 335, 340, 34 Sup. Ct. 68, 70, 58 L. Ed. 256, 259, with the observation "What was there said has since been regarded as the settled law upon the subject." See also: The Hannibal & St. Joseph Railroad Co. v. Smith, 9 Wall. (76 U. S.) 95, 99, 19 L. Ed. 599, 601, affg. 41 Mo. 310; Simpson v. Stoddard County, 173 Mo. 421, 443, 73 S. W. 700, 703.

Counsel for defendant cite a large number of authorities. Some state general propsitions of law not controverted by plaintiff; for instance: Before *legal* title becomes perfected under the Congressional grant of 1850, the lands are to be listed, platted and patented as provided by Section 2480, supra. As stated above, all this occurred prior to the institution of the instant litigation. A number of defendant's authorities involve Acts of Congress other than said Act of September 28, 1850, the specific rulings on which control here. In the Hannibal & St. Joseph Railroad Co., Little, and Rogers Locomotive Machine Wks. cases, supra (cited by both parties), and Hemp-

hill Lumber Co. v. Parker, 300 Mo. 568, 254 S. W. 698; the lands involved had not been listed, platted and patented under said Swamp Land Act. In the Little case, supra, the State had relinquished all claims under said act to the United States. The Hannibal & St. Joseph Railroad Co., Little and Rogers Locomotive Machine Wks. cases, supra, recognize that the grant under said Swamp Land Act of Congress was *in praesenti*, and, said latter two cases, that the inchoate title thereby conveyed, upon the issuance of patent, became perfected as of the date of said act.

This brings us to a consideration of the applicable Missouri law, hereinabove set out. The land here involved was "donated to" and made "the absolute property" of the county of Dunklin "for the purposes hereinafter designated" (Sec. 11128). No issue is presented, that the land was used for any unauthorized purpose. The county court of said county was authorized to sell the land at private sale for a price of not less than $1.25 per acre, with or without draining or reclaiming the same (Sec. 11130), and upon receipt of payment to issue a patent to the purchaser (Sec. 11131). The rulings of this court appear to be in harmony with the letter and spirit of said law. Linville v. Bohanan, 60 Mo. 554, 558, states: 'After the Act of September 28, 1850, granting the swamp lands to this State, the Legislature, by various acts donated the lands to the different counties in which the lands were situated, and invested in them the fee." And also mentioning Laws 1855, page 160 (now embodied in Sec. 11130, authorizing sale with or without draining or reclaiming the land), states: "By the legislative enactments above referred to the absolute title to the lands was vested in the counties, to be disposed of in the discretion of the county courts." Simpson v. Stoddard County, 173 Mo. 421, 445, 73 S. W. 700, 703, speaking of now Section 11128, states: "By its terms 'all of said lands in this state are hereby donated to the counties in which they may be respectively situated, *and shall be the absolute property of such counties,* for the purposes hereinafter designated.' This act simply confirmed to the counties the title which had been already granted to them by the Acts of 1851, 1853, 1855 and 1857 above noted." The Simpson case, 173 Mo. l. c. 446 et seq., 73 S. W. l. c. 703 et seq., quoted and approved the Linville case, supra. Hannibal & St. Joseph Railroad Co. v. Smith, 41 Mo. 310, was an action in ejectment by a railroad, claiming certain lands granted in aid of railroad construction under acts of Congress and the Missouri General Assembly, against one claiming under said Act of September 28, 1850, and applicable Missouri laws, although said lands had never been listed, platted and patented as provided for by Section 2480, supra. This court said (l. c. 344): "Whenever the title in fee shall become vested in the State, it cannot be doubted that it will relate back to the date of the

grant, and will vest by relation in the grantees under the state and counties; and such title would be prior and superior to any title that could be acquired under the Acts of 1852 and 1854.'' National Cypress Pole & Piling Co. v. Hemphill Lumber Co., 325 Mo. 807, 821, 31 S. W. (2d) 1059, 1065, states: ''When the lands are conveyed by the State and the identification occurs later, the passing of the title relates back to the date of the act, September 28, 1850. . . . Then under the pleadings in this case the defendant acquired an equitable title to the land and passed that on to the plaintiff. The plaintiff, however, says that the State while conveying to Dunklin County certain of these lands, did not describe the particular land in dispute except that 62 acres which the trial court held was not conveyed by the deed from defendant to plaintiff. By the Act of 1865 (1868, Laws 1868, p. 69) the Missouri Legislature granted all such lands to the several counties in which they were located, and title passed by such grant in the same way that title passed from the Government to the State of Missouri by the force of the Act.''

Defendant also contends the doctrine of relation back or inurement is not applicable because the patent issued by Dunklin County operated as a quitclaim deed, or a certificate of purchase, and a covenant of warranty is essential to the passing of an after-acquired title. Under the authorities, supra, the county of Dunklin had an inchoate or equitable title in and to said land as of the date of the enactment by the Missouri General Assembly donating said land to said county and, under said Swamp Land Acts of Congress and said General Assembly, said land only needed to be listed, platted and patented to said county in accord with said acts to identify the same and vest the legal fee-simple title thereto in said county. The patent of said county to said Shelton and subsequent conveyances transferred this inchoate or equitable title of said county to plaintiff, and operated as a transfer of the rights of said respective grantors in and to said subsequently perfected fee-simple title, issuing upon said inchoate or equitable title, to said respective grantees as of the date of the respective investitures in said grantors (subject to any intervening prior rights) of said inchoate or equitable title. [See: Callahan v. Davis, 90 Mo. 78, 82, 2 S. W. 216, 217; Hafner v. St. Louis, 161 Mo. 34, 45 et seq., 61 S. W. 632, 635; 50 C. J., p. 1103, sec. 520.]

The judgment is reversed and the cause remanded with directions to enter judgment in accord herewith. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.