**Joe MILLER and Mayphus Miller, Respondents,**

v.

**E. MEDLEY, Charles H. Peck, Jr., Stephen Peck, et al., Appellants.**

No. 44213.

Supreme Court of Missouri.

Division No. 2.

Sept. 12, 1955.

to

Bradley & Noble, Lawrence L. Bradley, Kennett, for appellant.

Riddle & Baker, Malden, for respondents.

**BARRETT, Commissioner.**

As far as this appeal is concerned, this is a suit to quiet the title to a triangular plot of land, consisting of approximately eight acres, in Section 36, Township 22 North, Range 8, in Dunklin County. This small tract of land was once a part of the swamplands of Dunklin County, it is bounded on the west by the St. Francis River and even now is of little value, except for the timber on it. The timber is the basis of the controversy between the parties to this action. The immediate parties to this appeal became interested in the land in these circumstances: On March 12, 1953, the plaintiff, Joe Miller, purchased 250 acres of land from Mr. A. E. McElyea. One of the tracts purchased by Miller, the S.W.¼ of the S.E.¼ of Section 36, also known and described as Lot 4, adjoins the triangular tract on the east, on the north and south half-section line. In March, 1949, the defendant, Mr. Medley, purchased 75.80 acres of land in Section 36 from Jim Todd. One of Mr. Medley's pieces of land, 21.80 acres in the S.W.¼ of Section 36, known as Lot 8, adjoins the disputed triangular tract on the north. It was a few weeks after Mr. Miller's purchase before he moved onto the land and when he did, he soon learned that Mr. Medley had contracted to sell the timber off the triangular plot. Also, Mr. Medley constructed a fence on the north and south half-section line. Mr. Miller took the fence down and rolled up the two strands of barbed wire. On Sunday morning, after Miller had taken the fence down on Tuesday, they met on the triangular tract, Medley with a shotgun and Miller with a rifle and, after some argument and name-calling concerning the fence, they parted, and on the 8th day of May, 1953, Miller instituted this action to quiet the title and to enjoin Medley from trespassing and selling the timber.

As far as is material here, the trial court found that the plaintiff, Miller, was in lawful possession of the triangular plot and that he and his immediate predecessor, A. E. McElyea, had been in "continuous, hostile, adverse, notorious, exclusive and lawful

possession" of the property for more than thirty-one years.

The court also found that neither Medley nor anyone else had been in possession of the property or paid taxes on it for more than thirty-one years, that title had emanated from the government more than ten years previously, and that title to the property was vested in the plaintiff and that the defendant had no right, title, or interest in the land.

Upon this appeal the defendant, Medley, claims that there was no substantial evidence that Miller and those from whom he claimed had color of title, that there was no substantial evidence that they had been in possession for more than thirty-one years, V.A.M.S. § 516.070, that there was no privity between McElyea and Miller, and that no right of possession was transferred so as to warrant Miller's tacking McElyea's claimed possession to his possession. It is also urged that there is no evidence that Miller and those under whom he claimed had paid taxes for the statutory period of thirty years, or that they were in possession one year before the filing of the suit, or that the equitable title to this particular plot of ground had emanated from the United States. For all these reasons it is urged that the decree should be reversed and that this court should adjudge the title to be vested in Medley.

This case was tried with reference to two plats of Section 36 and for the purposes of this appeal we have adopted the appellant's plat. Section 36 is an irregular section lying partly in Arkansas and partly in Missouri. The St. Francis River enters the S.W.¼ of the section on the northwest, runs eastwardly about two thirds of the way across the quarter section and then south and southeastwardly into the corner of the southeast quarter-section. All the area south and west of the St. Francis River is in Arkansas and all the area north and east of the river is in Missouri. The small area in dispute is bounded on the west and south by the St. Francis River. The east side or line of the triangular tract is the north and south half-section line. The projection of the east-west quarter-section line of the S.W.¼ of the S.E.¼, or the south line of the N.E.¼ of the S.W.¼, depending on one's point of view, constitutes the northern boundary of the tract. On the plat used by Mr. Medley, the N.W.¼ of the section contains 160 acres, the N.E.¼, the N.W.¼, and the S.E.¼ of the S.E.¼ each contains 40 acres, and the S.W.¼ of the S.E.¼ is noted as containing 44.62 acres. The quarter-sections are also described or identified by lot numbers and the S.W.¼ of the S.E.¼ is Lot 4 and that part of the N.E.¼ of the S.W.¼ lying in Missouri, consisting of 21.80 acres, is Lot 8.

■ As stated, Mr. Miller's predecessor in title was Mr. A. E. McElyea and his title was derived from a patent from Dunklin County, dated December 27, 1906. The patent and Mr. McElyea's deed to Miller described this part of the land conveyed as "the Southwest quarter of the Southeast quarter," and that is the basis of the appellant's argument that Mr. Miller and his predecessor in title did not have "color of title" to the triangular tract which lies in the southwest quarter section. It is said that the description in the patent is conclusive against a claim that the S.W.¼ of the S.E.¼ includes a piece of land shown by the plats to lie in the S.W.¼. 11 C.J.S., Boundaries, § 4, p. 544; Ohlson v. Batterton, Mo., 230 S.W. 110. In this connection the appellant put in evidence the title to "Lot 4" in Section 36, which, it will be remembered, is the S.W.¼ of the S.E.¼. That title began with a patent from Dunklin County to Cortez A. Kitchen, dated October 7, 1881, and ended in November 1902 with conveyances to the trustees of the estate of Charles H. Peck. (Incidentally, all the parties in this chain of title were made parties to this suit by Miller and have defaulted, and judgment has been rendered against them also.) The validity of the appellant's argument may be assumed as far as the actual conveyances are concerned, but neither Miller's nor McElyea's claim is dependent on color of title so that possession and acts of ownership of a part of the disputed tract would be deemed possession of the whole tract. V.A.M.S. §

516.040; Laclede Land & Improvement Co. v. Epright, 265 Mo. 210, 177 S.W. 386.

Nevertheless, this phase of the argument is noted because of certain plain inferences to be drawn from the physical facts and the record. These facts sharply point up the respective positions and claims of the parties with respect to the disputed tract. Even though the McElyea patent and Miller's first deed described the land as the S.W.¼ of the S.E.¼ and did not explicitly purport to convey lot 4, there is on all the plats on the north and south quarter-section line of the S.W.¼ of the S.E.¼ an engineer's mark or symbol, an "=" sign. At the beginning of the trial counsel for the plaintiff and the defendant entered into this stipulation: "It is further stipulated that the two small marks which resemble an equal sign on the half section line between the southeast (southwest) quarter of the southeast quarter * * are the signs and symbols used by engineers to indicate that the part appearing on both side(s) of the line is considered in the same lot as marked. In this case it is Lot 4. It is stipulated that the part of the southeast quarter of the southwest quarter lying east of the St. Francis River is part of Lot 4 of said section." The engineer's symbol is on the quarter-section line of the S.W.¼ of the S.E.¼ and is the eastern boundary of the disputed triangular tract. The parties estimated that the triangular tract contained approximately eight acres. The St. Francis River makes a curve or bend through the southeast corner of the S.W.¼ of the S.E.¼ and while it does not appear just what acreage is thereby taken from Mr. Miller's forty-acre quarter-section, it is obvious that the land area of the triangular tract plus the actual land area of the S.W.¼ of the S.E.¼ is close to, if not precisely, 44.62 acres as indicated on the appellant's plat. In any event, in view of the stipulation, as the appellant subsequently stated in the record, "it has never been claimed that we (Medley) have a deed to it." It is not necessary to say whether the descriptions in McElyea's patent and deed of the "S.W.¼ of the S.E.¼" convey all of "Lot 4" (Moore v. Helvy, 235 Mo. 443, 138 S.W. 481) which, under the stipulation, would include the triangular tract and give some "color of title," it is sufficient to say that Medley certainly did not have any "color of title" and he had no predecessor in title who claimed to have been in possession of the disputed tract. In this connection, Mr. Medley testified that he purchased 75.80 acres from Jim Todd in 1949. The land he purchased is indicated on his plat by the parts colored in blue. These consist of the forty acres in the S.W.¼ of the N.E.¼, a seven-acre strip off the south end of the S.E.¼ of the N.W.¼, a seven-acre strip off the east side of the N.W.¼ of the S.E.¼, and 21.80 acres in the N.E.¼ of the S.W.¼, or Lot 8, all of which totals exactly 75.80 acres. In these circumstances it is very difficult to understand why or how Mr. Medley "thought" the triangular tract was a part of his Lot 8 and that he had a right to occupy it.

But, as indicated, these matters are not decisive, the trial court found that Miller and his immediate grantor, Mr. McElyea, had been in adverse possession of the disputed tract for more than thirty-one years, that neither Medley nor anyone else had been in possession of or paid taxes on the tract during that time, that the equitable title had emanated from the United States more than ten years prior to the commencement of the action, and that title to the property was vested in Miller under Section 516.070. While, as pointed out by appellant, the evidence conflicts and there are contradictions and discrepancies in Miller's evidence, the trial court has resolved the conflicts and the trial court's finding is supported by such substantial evidence that it is not possible upon this record for this court to make a contrary finding.

The patent from Dunklin County to Mr. McElyea recited that the description was "according to the official plat of the survey of said lands returned to the general land office by the surveyor general and furnished to the said County of Dunklin, as exhibiting the Swamp Lands lying in and belonging to said County." Another recital

states that "the above described lands, granted by the Government of the United States to the State of Missouri, and by the State of Missouri to the said County of Dunklin as swamp lands lying and being in said County." On its face the patent identifies the land as "swamp land" and this court can judicially know, therefore, that the equitable title to the land emanated from "the government more than ten years." 9 U.S.Stat. 519, 43 U.S.C.A. §§ 982–984; Laws Mo.1852, p. 108; V.A.M.S. §§ 241.010–241.-280; General American Life Ins. Co. v. Dunklin County, 339 Mo. 289, 96 S.W.2d 380.

Mr. McElyea testified that after he purchased the 250 acres, including Lot 4, in 1906, he started clearing it. He never did clear all of it. As to the disputed triangular tract he said, "I sold the timber off of there two different times." The first time was four or five years after he purchased it, in 1910 or 1911, and the second time was in 1939. He testified that more than forty years previously he had erected a two-wire fence from east to west to the St. Francis River on the north quarter-section line, the inference being that the fence and the river enclosed the disputed tract with his adjoining forty acres. 2 C.J.S., Adverse Possession, § 26, p. 539; 1 Am.Jur. § 133, p. 869. About twenty-five years previously Mr. McElyea and Mr. Ward built a partnership woven wire fence on the same line, and about twelve years prior to the trial he and Mr. Hankins, who then owned Medley's land, put up a fence, "he helped repair it and furnished half the wire and half the posts." Since 1910 he had pastured the tract, "I just turned the cattle in in the summer season when I was pasturing on the back side." He stated that he had pastured some part of it every year since 1910. In all of his testimony he was corroborated by old neighbors. He had said that the east and west line was once blazed on the trees and his brother who helped him cut timber on it remembered the blaze although he was not certain of the dates. Mr. Ward lived on the adjoining land twenty-three years and he testified to the building of the fence. He, as well as other neighbors, testified that Mr. McElyea

claimed to own the triangular tract and that no one else ever claimed it. One neighbor says that prior to 1910 he helped Mr. McElyea cut off saw logs for a barn, and all of them knew of the fences and the pasturing of the cattle. While his use of the particular tract was not as intensive as it might have been had it been adaptable or suitable to other uses, for more than forty years it was so enclosed as to be attached to his adjoining land and it was occupied and used as much as its location and character would reasonably permit. Cashion v. Meredith, 333 Mo. 970, 64 S.W.2d 670; Weir v. Cordz-Fisher Lbr. Co., 186 Mo. 388, 85 S.W. 341.

The plaintiff, Miller, purchased from Mr. McElyea in February 1953. It was some weeks before he moved onto the land and this suit was instituted on May 8, 1953. In the meanwhile Medley had constructed the fence on the north and south quarter-section line and had cut three or four trees off the land. When Miller objected, in addition to taking the fence down, Medley claimed that he owned the property and "I told him I was of the opinion it was my property." Mr. McElyea says that he told Miller where the boundary line was, "where the east-west fence ran on the north line." But Miller says that he "looked over" the land at the time of his purchase and "Mr. McElyea stood and pointed these lines out to me when we were looking over it," he told him that the boundary line of Lot 4 was the quarter-section line west to the St. Francis River. In these circumstances Miller succeeded, as far as the character of the land and the circumstances permitted, to Mr. McElyea's possession (Abeles v. Pillman, 261 Mo. 359, 168 S.W. 1180) or "possessory claim" so there was privity of possession between McElyea and Miller, the disputed area was then enclosed with the contiguous land described in the conveyance and so, if necessary, Miller was entitled to tack his possession to that of McElyea. Annotation, 17 A.L.R.2d 1128, 1136, 1162; Burgess v. Magers, Mo., 24 S.W.2d 1042. Tacking McElyea's possessory claim to that of Miller, the plaintiff and his predecessor in title had been in adverse possession of the disputed triangular tract not only thirty-one years but for more than

forty years, and, as the court decreed, had become vested with title to the plot. In any event, Medley's claimed possessory right began in 1949, at which time McElyea had been in adverse possession for more than forty years and his possession continued for more than three years thereafter during which time Medley did not "within one year from said date, bring his action to recover the same", V.A.M.S. § 516.070, and that is sufficient to defeat his (Medley's) claim in this action. Crain v. Peterman, 200 Mo. 295, 98 S.W. 600; Campbell v. Greer, 209 Mo. 199, 108 S.W. 54; Auldridge v. Spraggin, 349 Mo. 858, 163 S.W.2d 1042.

■ It was stipulated that the assessment records of Dunklin County "show that that part of Lot 4 of said section lying in the southwest quarter of said section has never been assessed for tax purposes, and no taxes paid thereon." The stipulated fact shows that neither Medley nor anyone under whom he claimed, nor anyone else for that matter, had paid taxes on the disputed triangular tract for more than thirty years, V.A.M.S. § 516.070, and it was not necessary to Miller's success in this action that he show that he and McElyea had paid the taxes. Lewis v. Barnes, 272 Mo. 377, 199 S.W. 212. In this connection, throughout his argument, the appellant has ingenuously attempted to apply those provisions of the statute applicable to the "person claiming or who might claim the same" (here Medley or the prior record title holders) to the person or persons in possession and claiming title by reason of more than thirty years' adverse possession (here McElyea and his successor in title, Miller). V.A.M.S. § 516.070; Silvers, Missouri Titles, pp. 323–328; Collins v. Pease, 146 Mo. 135, 47 S.W. 925.

In considering the appeal anew and finding, as indicated, that the trial court's judgment and decree is supported by substantial evidence in every respect material we have considered, in addition to the evidence admitted, the evidence offered by the appellant and rejected by the court. V.A.M.S. § 510.-310(4). And so finding, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.