JOHN L. CARROLL AND HERMAN BORNEMANN, Jr., EXEC-
UTORS AND TRUSTEES OF THE LAST WILL AND TES-
TAMENT OF CHRISTIAN R. WOLTERS, Sr., AND MARY
ELIZABETH CARROLL, IRENE QUACKENBOS AND
CELIA A. WOLTERS, HEIRS AT LAW OF CHRISTIAN
R. WOLTERS, Sr., DECEASED, APPELLANTS, v. CITY
OF NEWARK, RESPONDENT.

Submitted May 29, 1931—Decided February 1, 1932.

For the appellants, *Lintott, Kahrs & Young.*

For the respondent, *Frank A. Boettner* and *Frederick H. Groel.*

The opinion of the court was delivered by

CASE, J.   This is an appeal from a judgment in favor of the city of Newark, respondent here, defendant below, and

against the appellants in an ejectment suit brought by the latter in the Essex County Circuit Court to recover possession of a tract of land with a frontage of thirty feet and a depth of sixty-two feet, located on the north side of Commerce street, in the city of Newark. The facts were stipulated and the case was, by consent, submitted to and determined by the court without a jury.

The appellants claim in the right of Christian R. Wolters, Sr., who was the owner of the property in 1888 but is now dead. On April 14th, 1888, the city, having theretofore negotiated unsuccessfully with Wolters for the purchase of the premises, filed its petition for the appointment of condemnation commissioners and in due season prosecuted the proceeding to an award of $20,000 in favor of Wolters. Wolters appealed from that award and on the appeal was granted $25,466. The city thereupon paid the last mentioned sum to Wolters and, by virtue of the consummation of the condemnation proceedings, entered into and upon the premises and used the same, together with other adjoining premises, for market purposes.

The proceedings to acquire the property were under an act entitled "An act to authorize the purchase and condemnation of land and the erection of buildings for market purposes in the cities of this state and other places in which market facilities are or may be required for public use, and to provide therefor," passed April 22d, 1886. *Pamph. L.* 1886, *ch. 191, p.* 268. The statute provides in part:

"1. That whenever in the judgment of the common council or other governing body of any city, additional market facilities are or may be required for public uses, it shall and may be lawful for such council or other governing body to appoint five commissioners, who shall serve without any compensation, to purchase such lands and erect suitable buildings thereon, to be used as a public market."

\*　　\*　　\*　　\*　　\*　　\*　　\*

"3. That in case it should in any case be found that suitable property cannot be purchased by agreement with the owner or owners, or in case the price demanded by such

owner or owners is, in the judgment of the commissioners, in any case exorbitant, and more than a fair equivalent therefor, then the said commissioners shall report the same, with a description of the said lands, to the common council or other governing body, and the said council or other governing body may order and direct the condemnation thereof."

\* \* \* \* \* \* \*

"5. That the said [condemnation] commissioners appointed by the Circuit Court \* \* \* shall forthwith proceed to estimate and determine the fair value of the lands and real estate so to be taken and condemned as aforesaid, and of the damages which the owner or owners thereof will suffer by reason of the taking thereof \* \* \* and immediately upon the payment to said owner or owners of the amount of the said valuation, or in case he or they will not or cannot receive the same, upon deposit of the same in such bank or institution as the said court or judge may direct, the title to and the right of possession of such property shall immediately become vested in such city or place; and any owner conceiving himself or herself aggrieved by the proceedings of said commissioners, may appeal therefrom to the Supreme Court of this state at any time within sixty days after the filing of the said certificate, and the said court shall thereupon order a trial by jury to assess the value of the said property and the said damages, which trial shall be conducted in all respects as in other cases of trial by jury, and the final judgment of the said court upon the verdict rendered therein shall be conclusive upon all parties as to the said valuation and damages \* \* \*."

\* \* \* \* \* \* \*

"6. That all titles taken for the purposes mentioned in this act shall be in the name of the city or place in which the lands are purchased and the buildings erected by virtue of the provisions of this act."

Section 7 provides for the payment of condemnation commisioners.

Section 8 provides for the raising of funds "to pay for the land so purchased or condemned, and for the damages for

the taking thereof, and for the cost of such buildings and other expenses connected therewith," and directs the commissioners for the improvement (to be distinguished from the condemnation commissioners) to "make a full and detailed statement of the entire cost of the lands purchased, the buildings erected, and all of the expenses incurred by them."

Paragraph 9 provides "that the net revenues from all lands and buildings used for market purposes in every such city or place shall be devoted exclusively to the payment of the interest which may accrue upon the said bonds, and to a sinking fund for their redemption and payment when due * * *."

For approximately thirty-five years the lands were used by the city for market purposes, and it is not contended that Wolters or his heirs had, or claimed, any possession or any right of possession during the period of that use. Then a new market place was elsewhere instituted by the city. The buildings and structures of the old market were demolished and the lands were put to new uses. The lands in question, with an adjoining lot involved in concurrent litigation, were, by ordinance adopted by the city of Newark on or about March 21st, 1924, opened as a public street, to be known as Commerce Court and to extend from Commerce street to South Canal street.

The major points presented by appellants are, first, that the city of Newark took but an easement in the property, second, that if the city did acquire a fee, it was a conditional, base or determinable fee, and, finally, that in either event the use for which the property was condemned has been abandoned and, in consequence, the property has reverted to the former owner. The city responds that, by virtue of the condemnation proceedings, it acquired an estate in fee-simple absolute, the title to which is not subject to any right of reversion, and, furthermore, that even though the city be found to possess only a qualified fee, it may nevertheless devote the land to the street use.

It may be said of a municipality, as it was said of a railroad corporation in *Currie* v. *New York Transit Company and National Docks Railway Co.,* 66 *N. J. Eq.* 313, that the quantity of interest in land obtained by it under the power of eminent domain is that which the statute conferring the power authorizes it to acquire and that the legislature may authorize the taking of a fee or any less estate in its discretion. The earlier cases were reviewed by our Chief Justice in the opinion written by him for this court in the Currie case and need not be here adverted to in the continued recognition of the enunciated principle.

The next question is: What quantity of interest did the statute which conferred the power of eminent domain authorize the city to acquire? The statute is to be read, not under the necessity of finding fixed phraseology, but to ascertain its intent, because this intent, clearly found, will prevail. No precise words are necessary in a statute to authorize the condemnation of a fee. As was said by Mr. Justice Holmes, then a justice of the Supreme Judicial Court of Massachusetts, in *City of Newton* v. *Perry,* 163 *Mass.* 319; 39 *N. E. Rep.* 1032, "there are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee." See, also, *Driscoll* v. *City of New Haven* (*Conn.*), 52 *Atl. Rep.* 618.

The statute, from its title throughout, anticipates the exercise of complete control over the lands by the city. The city is authorized to erect suitable buildings without limitation as to character or extent except that they shall be suitable to their purpose. The revenues from all such lands and buildings are to be devoted exclusively to the payment of accruing interest on, or toward the redemption of, the bonds issued by the city to finance the enterprise. Thus, dominion over the land and its increment is in, or for the advantage of, the city. The land is not for the indiscriminate use of all the inhabitants of the city, as for instance is a highway, or as is even a park, but is for such selective use as must be maintained when market space is to be let and revenues therefrom collected.

The commissioners in condemnation are required by the statute to determine the fair value of the "lands and real estate" to be taken and if their award be appealed from the trial by jury shall be to assess "the value of the said property"—provisions not inconsistent with the taking of an estate of inheritance.

Significance must attach to the statutory expression "the title to and the right of possession of such property shall immediately become vested in such city." It is "the title" of which the statute speaks and that is a phrase which by common acceptance, as well as in the books, means full title. Bouvier defines "title," as applied to lands, to be "the means whereby the owner of lands hath the just possession of his property." Webster's New International Dictionary gives the primary definition of the word in its law use thus: "The union of all the elements which constitute ownership, at common law divided into possession, right of possession and right of property, the last two now, however, being considered essentially the same." Likewise "vest" is a word of substantial import and is thus defined by Bouvier: "To give an immediate fixed right of present or future enjoyment. An estate is vested in possession when there exists a right of present enjoyment; and an estate is vested in interest when there is a present fixed right of future enjoyment."

The provision in section eight that the city commissioners supervising the improvement shall make a "statement of the entire cost *of the lands purchased,* the buildings erected and of all the expenses incurred by them" uses the word "purchased" as inclusive of "condemned;" that is to say, the legislature, in this respect at least, did not distinguish between purchase and condemnation.

Nothing in the statute bears the ear-mark of an easement. There are certain public uses, of which the highway is a conspicuous instance, that are and long have been regarded as easements, wherein the ownership of, and limited dominion over, the land remains in him upon whose lands the servitude is impressed. Such a servitude, viewed from the angle of the servient lands, and such an easement, viewed from the

angle of the property or the persons in favor of which or in whom the right exists, have been, from time immemorial, ascribed to the right of passage or the right of way (*vide* the *iter, actus* and *via* of the Roman law). A line of our decisions, of which the most recent is *Frelinghuysen* v. *State Highway Commission,* 107 *N. J. L.* 218; *affirmed, post, p.* 403, have established that when the state takes the property of its citizens for highway purposes, it takes an easement only. This easement is primarily a right of passage, and while secondary uses are sustained as related thereto, nevertheless the fact of passage remains the touchstone; and, therefore, an unrelated use may not be made of the highway against the consent of the private owner of the fee, except by condemnation under the power of eminent domain. *Nicoll* v. *Telephone Co.,* 62 *N. J. L.* 733. But there is an inherent cleavage between such an easement, or indeed between any easement, and the estate that comes to a municipality under acquisition of lands for a purpose that may endure forever and that, while it lasts, embraces exclusive possession and exclusive right of possession.

The purview of the statute may not, we think, be cramped into an easement or a right in the nature of an easement. The city was authorized to acquire a fee.

Having that authority, what did the city reach out to take, what did it in fact take and what did it pay for?

It negotiated with Wolters, not for a right to use lands, but for the purchase of "the lands." That was pursuant to the appointment of city commissioners "to purchase or condemn said lands." Stipulation of fact No. 3 reads in part:

"Pursuant to the provisions of said act, the common council of the city of Newark, on September 2d, 1887, appointed commissioners to purchase or condemn said lands, and entered into negotiations with Christian R. Wolters, Sr., the owner of said premises, for the purchase thereof, but failed to agree with him as to the price to be paid to him for said lands."

The commissioners for the improvement then proceeded to condemn that which the city had been unable to purchase, namely, "the lands"—more specifically, the lands which the

city entered into the complete and exclusive possession of in 1888, over which the city has exercised undisputed dominion from thence hitherto, and which are described in the complaint in the instant cause. The city acted to acquire the entire quantity and extent of interest permitted by the statute. That full measure of estate was necessary for the character of improvement and use contemplated by the statute and actually put into effect by the city.

It is claimed that there is no evidence that the owner received the full value of his lands. To this it may be said that there is no evidence that full value was not paid and that the amount of the award, regard being had for the size and location of the lot and the period of the transaction, does not carry intrinsic indicia of insufficiency; that on the contrary the statute required the fair value of the lands to be determined and paid; that the owner on his appeal from the original award obtained an increase of more than twenty-five per centum in the determination of value; that the last mentioned verdict was paid to and received by him; that by the statute that verdict was made "conclusive upon all the parties as to the said valuation;" and that consequently, on the theory of *res adjudicata,* the appellants are bound by this finding of value.

There is no suggestion that the acquisition, the use or the change was *mala fide.* There is no taint of fraud or of concealed purpose to negative a result otherwise reached. The city took the lands in fee.

It remains to consider the effect, if any, of the change in use. It is not charged that the new use is a greater burden on the lands or that it results in a greater deprivation to those who claim a reversion. The claim is merely that the use is *different;* and manifestly it *is* different; and the former use is, we find, abandoned. But the new use is a public use for which the power of condemnation is available; and inasmuch as the owner was paid the fair value of the lands, just compensation has been made. Changes, incident to the passing of the years, may cause a tract of land, originally taken for market uses, to serve a better public purpose as a

site for a fire house and still later for a municipal court house. In the case at bar it chanced that the public was more efficiently served by changing the use to that of a street. It would, we think, be an exaggeration of the essence of private ownership and a mulcting of the public purse to hold that when an individual has had his lands taken for public use and has been fully paid for those lands he, or his heirs after him, should be entitled to payment anew whenever the character of the public use changes, simply because it does change.

The Supreme Court opinion in *Paterson* v. *Kearny,* 84 *N. J. L.* 456 (*affirmed,* 87 *Id.* 327, in part on the opinion below), is cited *contra..* . The issue was the right of the town of Kearny to proceed with the condemnation of land for a water supply. The Supreme Court found that the city was proceeding in good faith under statutory authority and held that the action was legal. Its opinion contains this sentence: "If that was not the real object, or if the water is diverted to some other use not authorized, the right acquired will be at an end, just as land reverts to the prior owner when the use for which it is condemned is abandoned." That language was predicated upon a hypothesis that did not grow out of the determined facts of the case and that therefore was not before the court for decision. It was *obiter.* Also, the assumed contingencies of bad faith and putting the lands to a use for which the municipality is not authorized to condemn are not present in the instant case.

The Supreme Court in *Strock* v. *East Orange,* 80 *N. J. L.* 619; 77 *Atl. Rep.* 1051, speaking through Mr. Justice Parker observed that:

"When land has been acquired for public use, as for a park, by condemnation and payment to the owner of its full value, or by sale and purchase, it seems to be competent for the legislature to authorize the municipality so acquiring it to use it for other purposes. *Brooklyn Park Commissioners* v. *Armstrong,* 45 *N. Y.* 235; 6 *Am. Rep.* 70."

The New York Court of Appeals in the cited case says:

"Where the property is taken, the owner paid its true

value, and the title vested in the public it owns the whole property, and not merely the use; and though the particular use may be abandoned, the right to the property remains. The property is still held in trust for the public by the authorities. By legislative sanction it may be sold, be changed in its character from realty to personalty, and the avails be devoted to general or special public purposes."

We conclude that when a municipality has, in good faith, by condemnation, under legislative authority, taken title in fee to lands for a public use, and has paid the full value thereof, the fee is not determined by the fact that the municipality abandons the specific use for which the lands were taken and devotes the lands to another public use. We find that the city of Newark paid the full price of the lands; that it intended to, and did take the title in fee and that the fee was not determined by the fact that the city abandoned the market use and devoted the lands to street purposes.

The city of Newark has attempted neither to dispose of the lands nor to apply them to other than a public use. Therefore it is not necessary to decide whether the title held by the city is a fee-simple absolute or is of the class described as fee-simple determinable. *Pipe Line Co.* v. *Delaware, Lackawanna and Western Railroad Co.*, 62 *N. J. L.* 254, 268.

The judgment below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, HETFIELD, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—PARKER, KAYS, JJ. 2.