**G. MERIWETHER, Jr., Plaintiff in Error,**

v.

**GULF OIL CORPORATION and State of Oklahoma ex rel. The Oklahoma Planning and Resources Board, Defendants in Error.**

No. 36997.

Supreme Court of Oklahoma.

June 12, 1956.

Crawford W. Cameron, Marietta, Twyford, Smith & Crowe, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James C. Harkin, Asst. Atty. Gen., for State of Oklahoma.

James B. Diggs, Jr., Cyrus L. Billings, Tulsa, Goins & Smith, Ardmore, for Gulf Oil Corp.

HUNT, Justice.

By an action instituted more than twenty years ago as Cause No. 4323 in the District Court of Love County, Oklahoma, the State of Oklahoma, on the relation of the Governor, the State Board of Public Affairs, and the State Fish and Game Commission, under the authority of a law enacted as Senate Bill No. 382 of the Fourteenth Legislature, S.L.1933, pp. 112–114, condemned certain lands, including the 40 acres of Love County land here involved, for the purpose of having a State lake constructed thereon. The 40 acres in question then belonged to G. Meriwether, Sr., father of plaintiff in error, who as a defendant in said action, received the sum of $400 therefor, under order of the court apparently entered in 1934, in accord with the ap-

praisal of the Commissioners theretofore appointed in said condemnation proceedings.

Apparently, at some undisclosed time after the State Board of Affairs had thus acquired title to, and had gone into possession of said tract, along with others involved in said condemnation proceedings, Mr. Meriwether, Sr., gave plaintiff in error a deed that has never been recorded to the minerals under said tract. In September, 1954 the Oklahoma Planning and Resources Board leased said 40 acres to Gulf Oil Corporation for oil and gas exploration purposes and, in the present action, instituted a few weeks thereafter, said lessor and lessee, as plaintiffs, recovered judgment against the plaintiff in error and other parties not necessary to name herein, as defendants, quieting their title to said tract. G. Meriwether, Jr. has lodged the present appeal from said judgment and he, like the defendants in error, will hereinafter be referred to by their trial court designations.

The defendant Meriwether in his answer admits that the plaintiff, State of Oklahoma, is the owner of the surface of the land involved, but specifically denies that the plaintiff is the owner of the minerals underlying the land, or any claim thereto. In his brief he says the State acquired title to the surface of the land and that the sole question is, did the State by such condemnation proceedings, acquire title to the mineral estate. Defendant, in support of his proposition that the judgment of the trial court is contrary to law, quotes from a number of texts on eminent domain and from decisions of this court in condemnation proceedings and concludes his argument with the statement that the legislative act does not specify the quantum of the estate to be acquired, and that the mineral estate is not necessary for the lake project and, therefore, title to the mineral estate did not pass to plaintiff in the condemnation proceeding but is vested in the defendant, Meriwether, by virtue of the deed hereinabove referred to.

The defendants in error take the opposite view. The legislative act under which the condemnation proceeding was instituted authorized the State Board of Affairs to acquire by purchase or condemnation 16,-300 acres of land for the purpose of having constructed a State lake thereon, the same to be under the full control, supervision and jurisdiction of the State Game and Fish Commission, under rules and regulations to be promulgated thereby, governing the use of the property and establishing of camp sites, business houses and lodges on the lake, and to charge a license fee for hunting and fishing thereon. The Governor and State Treasurer were authorized to negotiate a loan with R. F. C. to pay the cost of the land and pledge the revenues arising therefrom. If the statute authorized the State to take fee title to the surface of the land, which title defendant concedes the State did acquire, it would logically follow that it could take a fee simple title to the whole estate in the land, there being no title restriction or qualification in the act. The words "land" or "lands" are used several times in the act without qualification.

The word "land" is defined by statute, Title 60 O.S.1951 § 6, as follows:

"Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance."

The court, in Sinclair Refining Co. v. Burroughs, 10 Cir., 133 F.2d 536, 539, in construing an act relating to an assessment against land, quoted the above statute and said:

"Having defined the terms 'land' and 'real property', it must follow that when the law making body of the state uses one or the other of these terms, it uses them in the sense in which it had defined them."

In Cuff v. Koslosky, 165 Okl. 135, 25 P.2d 290, 291, the court, in discussing a mineral deed said:

"The instrument in question does not appear in the record, but we think it is conceded by the briefs that this mineral deed includes all mineral rights, coal, zinc, lead, and other minerals. * * * We are considering the instrument as dealing with oil and gas.

"It is settled law that oil and gas in place are minerals, and that so long as they remain unsevered from the soil are a part of the realty. In this jurisdiction oil and gas, although they form a part of the corpus of the soil, the aggregate physical interest in the land, while in place are not subject to absolute ownership separate and distinct from the soil of which they form a part."

The legislative act here in question specifically authorized the purchase or condemnation of a specified number of acres of land, which includes all minerals therein. The act, as we construe it, in view of the expressed purpose and intended use of the land, contemplated and was requisite to the acquisition of the fee simple title to such land. Title 66 O.S.1951, § 57 was in effect at the time of the institution of the condemnation proceedings and reads in part as follows:

"The provisions of this article with reference to eminent domain shall apply to * * * the State of Oklahoma and its various educational, reformatory, penal and eleemosynary institutions, including departments of state having the power to purchase real property for public purposes, and such institutions and departments shall have the right under this article to acquire fee simple title to the property taken."

Both parties relied on parts of the language and holding in the case of Harn v. State ex rel. Williamson, 184 Okl. 306, 87 P.2d 127, as supporting their views. The legislative act there in question authorized the State Board of Affairs to purchase or condemn a 40 acre tract of land for use in connection with the State Capitol Grounds. The legislative act and the condemnation proceedings under consideration in the case at bar equally, if not more clearly, expresses the authority and intent to acquire a fee simple title to the land than does the act and proceedings in the case of Harn v. State, supra.

The petition for appointing appraisers in the condemnation proceeding involved in the present case states in part that it is necessary for petitioner to appropriate the described real estate for the purpose of constructing thereon a State lake, and the petition ends with a prayer asking that Commissioners be appointed to assess the damages.

"* * * which said owners will sustain by reason of such appropriation of said land; and that this plaintiff may thereupon be authorized to acquire the full and complete fee simple title and enter upon said land and take said real estate and appropriate it for the construction of the State lake upon the payment of such damages as may be awarded."

The commissioners' report in the case states, among other things, that:

"* * * it is necessary to acquire said property and the whole of said property is necessary for the purpose aforesaid, and that the whole of said property described must be taken by the said plaintiff for said purposes and the title thereto acquired."

We consider the following quoted language from the syllabus in the case of Harn v. State, supra, to be applicable to the case now before us.

"4. Where it appears from the language of a statute that the Legislature thereby intended to appropriate the fee simple title in realty for the use of the State, and that such title is reasonably requisite to the designated use, condemnation proceedings suitably prosecuted to that end will pass the fee simple title to the State",

and the following from the opinion:

"That the estate sought was intended by the Legislature to be a permanent acquisition is hardly subject to doubt. 'There are no sacramental words which must be used in the statutory power to take and hold lands in order to give a right to take the lands in fee.' City of Newton v. Perry, 163 Mass. 319, 39 N.E. 1032. See also Carroll v. Newark, 108 N.J.L. 323, 158, A. 458, 79 A.L.R. 509.

"A command to purchase or to acquire land constitutes a mandate to

take full and complete title unless the command contain qualifying provisions to indicate otherwise. The word 'land', without indicative limitation, is all inclusive and embraces every estate or use therein capable of segregation and ownership. This definition applies to the term 'land' when used in reference to the right of eminent domain. 20 C.J. 589, sec. 76. * * * Above, we have said that a command to take the land was a command to take the fee simple estate. Clearly, nothing short of a fee estate would be commensurate with the stated purpose in the instant case."

Defendant asserts that the mineral estate was not necessary to the lake project and is demonstrated by the fact that the State subsequently made an oil and gas lease on the land. Such action on the part of the State indicates more clearly the importance and necessity of exclusive control and use of the land by the State. The situation as it existed at the time of the taking is controlling, and not the conditions at some later date or development.

As pointed out herein, no contest was made by the land owner respecting the quantum of the estate taken under the proceedings.

Defendant refers to the case of City of Cushing v. Gillespie, 208 Okl. 359, 256 P.2d 418, 36 A.L.R.2d 1420, as being in accord with his theory and argument. The opinion in that case states that certain facts are highly indicative that the city did not actually intend to take the mineral rights in the condemnation proceedings, and it is there stated in the concluding part of the opinion that the trial court, in effect, told the jury that the minerals did not pass under the proceedings in question, and that it must be presumed that the jury had such instruction in mind at the time of assessing the defendant's damages in that case. The record and evidence in that case distinguish it from the present one.

Defendant also refers to the case of Martin v. City of Bethany, 199 Okl. 57, 182 P.2d 517. In the opinion in that case it is stated that the condemnation proceedings and judgment do not show an inten-

tion to take a fee simple title, in view of the fact that the proceedings do not use the words "fee simple" or any other words denoting an estate of that quality, and the decree uses only the word "possession" in connection with the interest intended to be conveyed to the town. The facts, as outlined in the opinion in that case, distinguish it from the present action.

In the case of Fischer v. Oklahoma City, 198 Okl. 22, 174 P.2d 244, 246, wherein the plaintiff sought to recover land taken under eminent domain the court, in speaking of the right of a land owner to contest the need for taking the land or the nature of the estate to be taken, states:

"If the owner does not contest the need for taking his land and does not question the estate taken, at least it is reasonable to assume that he waives the objections, 29 C.J.S., Eminent Domain [§ 228], note 49."

In the case at bar the land owner, after full knowledge of all the proceedings and notice that the full title was being sought, accepted the amount of damage awarded in the commissioners' report and did not contest the right or need to take the land, or question the estate taken.

Referring again to the Harn case, supra, we quote from page 129 of 87 P.2d, as follows:

"In deciding the question here presented, the extent of the estate condemned, we must look to the Act authorizing the condemnation (ch. 298, S.L.1919), and to the proceedings instituted pursuant thereto, including the commissioners' report aforesaid. If, from that inspection, it appears that the Legislature by its enactment intended to appropriate the fee simple title, and that such title was reasonably requisite to the designated use, and suitable proceedings were prosecuted to that end, we must hold that the fee simple title passed to the city."

We have followed the rule in this case and are clearly of the opinion, under all the facts as disclosed by the record herein, that the Legislature by its enactment intended to appropriate the whole, or fee simple title, and that such title was rea-

sonably requisite to the designated use and suitable proceedings were prosecuted to that end.

We, therefore, conclude and hold that the judgment of the District Court of Love County, decreeing the plaintiff, the State of Oklahoma, to be the owner of the full, legal and·equitable title in fee simple to the land and premises described, subject, however, to a valid subsisting oil and gas lease owned by Gulf ·Oil Corporation, and quieting the title to the land in the State of Oklahoma, and the ownership of the oil and gas lease in behalf of the Gulf ·Oil Corporation, and enjoining the defendant, G. Meriwether, Jr., and anyone claiming any right, title or interest in the land through him, from asserting any right, title or interest in the land adverse to the State of Oklahoma or the Gulf Oil Corporation, is warranted and supported by the evidence and law.

The judgment of the District Court is affirmed.·

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY and JACKSON, JJ., concur.

BLACKBIRD, J., concurs in result.