Charles E. BRADLEY and Leona M. Bradley, his wife; Charles E. Bradley, Guardian of the persons and estates of Edward Rex Bradley and Carol Ann Bradley, minors; Paul Nichols and Mildred Nichols, his wife; and William H. Klinger and Belle L. Klinger, his wife, Plaintiffs-Appellants,

v.

ELSBERRY DRAINAGE DISTRICT, a Drainage District Corporation, Defendant-Respondent.

No. 52859.

Supreme Court of Missouri, Division No. 2.

April 8, 1968.

McIlroy & Millan, Bowling Green, Myrl B. Sternke, Palmyra, for appellants.

Jonathan E. Clarke, Elsberry, Andrew J. Murphy, Jr., Edward A. Glenn, Louisiana, for respondent.

FINCH, Presiding Judge.

This appeal by plaintiffs is from an adverse judgment in a suit to quiet title. They sought to establish title to certain lands in themselves, subject to a right-of-way easement for levee purposes in defendant drainage district. We have jurisdiction because title to real estate is involved. Article V, § 3, Constitution of Missouri, 1945, V.A.M.S.

Defendant is a drainage district corporation, incorporated by the Circuit Court of Lincoln County on January 3, 1911.[1] Thereafter, on June 29, 1916, in a proceeding instituted by defendant, the Lincoln County Circuit Court entered a judgment in condemnation involving a large number of tracts. That decree confirmed the report of commissioners assessing benefits and damages and provided that title should pass to the district upon payment by it of the sums for which judgment was entered. The suit included certain tracts in Pike County which were then owned by E. and C. Beall, W. O. Gray and W. A. Irwin and which are the ones involved in this suit. Plaintiffs claim as successors in title of the Bealls, Gray and Irwin.

In 1916 defendant constructed on the lands condemned an earthen levee to protect

1. On September 28, 1964, the court granted authority to the district to continue perpetually.

lands lying in the drainage district from the Mississippi River. Defendant has not abandoned that levee and has continued to maintain it.

Plaintiffs, until 1964, owned approximately 1987.24 acres which were immediately west of said levee. In 1964 plaintiffs sold this acreage to the United States for the Mark Twain National Wildlife Refuge. It was disclosed in oral argument that this suit was instituted after plaintiffs had sold their 1987.24 acres because, if successful, they would receive additional compensation from the United States for acquisition of their underlying fee in the property on which the levee is located.

The position taken by the plaintiffs is that the defendant district in the condemnation proceedings in 1916 acquired merely an easement for the construction and maintenance of a levee and did not acquire fee simple title. This involves, first, a determination of whether the applicable statute authorized condemnation of fee simple title by the drainage district and, second, assuming that it did so authorize, whether the district in fact acquired fee simple title in the proceedings.

It is conceded by all parties hereto that the condemnation proceedings were brought pursuant to § 5513, RSMo 1909.[2] That section authorized construction and maintenance of "main or lateral ditches, canals, levees, dams, sluices, reservoirs, holding basins and floodways." The statute also authorized the district to "acquire, by donation or purchase, and, if need be, condemn any real estate, easement, railroad right of way, sluiceway, reservoir, holding basin or franchise." Appointment of commissioners, when necessary, and determination by them of benefits and damages, was authorized. The section then concluded with this language: "*and provided further*, that whenever the commissioners award to any

owner of land, as damages to said land, the full market value of such land, and the amount of said award is paid for by said district, then, and in that event, the title, use, possession and enjoyment of said land so condemned shall pass from said owner and be vested in said district, and subject to its use, profit, enjoyment and final disposition in the same manner and with like effect as lands belonging to the county."

An examination of the Session Acts of 1909 (Laws Missouri 1909, p. 620) discloses that House Bill 651 was enacted at that session as an amendment to Chapter 122, Article 3 of the Revised Statutes of Missouri of 1899, which chapter related to and was entitled "Swamp and Overflowed Lands." The new section added by said amendment was designated as § 8259b in said chapter on swamp and overflowed lands. In the revision of the Statutes in 1909 the section was renumbered as § 5513 and the reviser moved it from the chapter on swamp and overflowed lands to the chapter and article relating to circuit court drainage districts.

We conclude from our examination of the provisions of said section that the legislature intended to authorize circuit court drainage districts to acquire fee simple title to property being condemned. Plaintiffs concede that the language of the statute is broad enough to permit acquisition of fee simple title for some purposes. For example, they state that the district could acquire the fee for a site for buildings or a pumping station, but they contend the language is not broad enough to permit acquisition of the fee for right-of-way purposes. They mention that the statute specifically grants a right to acquire right-of-way. However, in the language from the statute heretofore quoted it appears that the district is authorized to "condemn any real estate, easement, railroad right of way, sluiceway, reservoir, holding basin or franchise." This language

---

2. The article and chapter of which this section was a part was amended in 1913 (Laws Missouri 1913, p. 290) but § 53 of the new act permitted existing districts to proceed under existing law, and there is agreement that defendant district proceeded under § 5513, RSMo 1909, without amendment.

permits the district to condemn existing outstanding interests which are less than a fee. It does not say that condemnation of "real estate" is to be limited to things such as pumping stations or buildings, and the statute does not say that only an easement is to be acquired for right-of-way purposes. It is difficult to see wherein a pumping station erected in connection with a levee is any more permanent or would require any different kind of interest than the levee which the pumping station serves.

■■ It is true, as plaintiffs point out, that the statute did not use the words "fee simple," but such words are not essential to a finding that the statute authorized the acquisition of fee simple title. As Mr. Justice Oliver Wendell Holmes, then a Justice of the Supreme Judicial Court of Massachusetts, said in City of Newton v. Perry, 163 Mass. 319, 39 N.E. 1032, "There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee." Rather, the question must be determined on the basis of whether the language of the statute as a whole indicates an intention to authorize the acquisition of the fee or something less than the fee.

■ The argument of plaintiffs overlooks significant language in the statute. For example, the section provides that "title, use, possession and enjoyment" of land condemned passes from the owner to the district. The statute goes on to provide that the commissioners shall ascertain the "full market value of such land" as damages. This is indicative of acquisition of the whole title. It further provides that when this has been done and the money paid, "the title, use, possession and enjoyment of said land so condemned shall pass from said owner and be vested in said district." These words indicate an intention to authorize the acquisition of more than a mere easement. They speak of title vesting in the district on payment of the full market value of the land. The words of the New Jersey Court of Error and Appeals in Carroll v. City of Newark, 108 N.J.L. 323, 158 A. 458, 461, 79 A.L.R. 509, 513, are pertinent:

"The commissioners in condemnation are required by the statute to determine the fair market value of the 'lands and real estate' to be taken, and if their award be appealed from the trial by jury shall be to assess 'the value of the said property'—provisions not inconsistent with the taking of an estate of inheritance.

"Significance must attach to the statutory expression 'the title to and the right of possession of such property shall immediately become vested in such city. It is the 'title' of which the statute speaks, and that is a phrase which by common acceptance, as well as in the books, means full title. * * * Likewise 'vest' is a word of substantial import * * *."

After further discussion, the court concludes, 108 N.J.L. 1. c. 329, 158 A. 1. c. 461, 79 A.L.R. 1. c. 513: "The purview of the statute may not, we think, be cramped into an easement or a right in the nature of an easement. The city was authorized to acquire a fee."

Our conclusion is strengthened by the fact that the statute provides that the district is to have the "use, profit, enjoyment and final disposition" of the land. These are words which further indicate the legislature's intention to authorize acquisition of the fee. An easement for a particular use, such as a levee, would cease to exist if the district discontinued its use for that purpose and there would be no occasion in that event to authorize final disposition of the land by the district. It would have nothing of which to dispose if the limited use for which the easement was acquired had terminated. The power of disposition conferred on the district indicates that fee simple title was contemplated.

In this connection, we further note that the concluding words of the section provide for "final disposition in the same manner and with like effect as lands belonging to the county." To what does this language

refer and what is its significance? An examination of Chapter 122, Article 3, RSMo 1899, discloses that sections therein provided for conveyance of swamp lands by the state, by patent, to the counties wherein such lands were located. The sections further provided for subsequent sale and disposition of these lands by the county "in like manner and with like effect as is or may be provided by law for the conveyance of other real estate belonging to their respective counties." §§ 8244–8249, RSMo 1899. This court has previously held that title conveyed thereunder by the state to the county and by the county to individuals was fee simple title. General American Life Ins. Co. v. Dunklin County, 339 Mo. 289, 96 S.W.2d 380. It is our conclusion that the concluding language of § 8259b referred to these preceding sections in the same chapter and article relating to disposition of swamp lands by the counties, and indicates a legislative intention that the drainage district would own and have the power to dispose of fee simple title.

The fact that the reviser of statutes transferred § 8259b, as adopted at the 1909 legislative session, to another chapter and article and renumbered the same did not change the fact that the section was enacted as an amendment to the chapter on swamp and overflowed lands and that we must so recognize in ascertaining the legislative intent.

Plaintiffs call attention to the fact that this section under which the property was condemned provided that the condemnation proceedings should be handled in the same manner as suits relating to interests in land taken for telegraph, telephone, gravel and plank and railroad purposes, in all of which only easements are acquired. They assert that this indicates a legislative intention that the drainage district would be limited to the interest in land which the other named agencies could acquire by condemnation. That conclusion does not logically follow. The statute merely prescribed the procedure to be followed. It did not indicate by that language the character of the

interest which it authorized drainage districts to acquire.

Plaintiffs cite the case of Houck v. Little River Drainage District, 343 Mo. 28, 119 S.W.2d 826, as construing the words in the statute in question to mean a right-of-way easement. Actually, that case did not involve the title of the district to the land condemned for levee purposes or the nature of the interest acquired therein. The specific question decided was whether, in condemning a strip of land for the levee, the district also acquired the underlying fee in an adjoining road right-of-way so as to justify an enlargement of the levee onto the road right-of-way. The court held that the district acquired only the land which it condemned and not any interest in the adjacent road easement. In so holding, the court stated, 119 S.W.2d l. c. 831: "Under the strictissimi rule, Sec. 5513, R.S. 1909, could not reasonably be construed to mean that any interest in any land passed, upon condemnation by defendant of the right of way of Ramsey Creek Diversion channel and levee, except *said land* (See Sec. 5513, R.S. 1909, supra), that is the right of way. Able counsel do not call our attention to any case and we find no case supporting the contention that by acquiring the right of way by condemnation of Ramsey Creek Diversion channel and levee, defendant thereby acquired the right to superimpose upon the adjacent rockroad easement an additional public servitude, and we rule that defendant acquired no such right." It is clear from the above language that the court did not hold that the right-of-way for the channel and levee was merely an easement.

■ The legislature has the right by statute to authorize a drainage district to acquire fee simple title for rights-of-way. There is no constitutional provision prohibiting such action (except as to rights-of-way for railroads, Art. I, § 26, Constitution of Missouri, 1945) and the extent of power of condemnation to be conferred is left to the discretion of the legislature. Plaintiffs argue that it is unthinkable that the legislature

intended to or would permit condemnation of a strip of land several miles long but only 100 to 150 feet wide and then grant to the district the power of final disposition of the property. As this court pointed out in City of Moberly v. Lotter, 266 Mo. 457, 181 S.W. 991, 994, "A difference of opinion may exist as to the wisdom of statutes of this character," but this question is within the discretion of the legislature. What the legislature intended, of course, we must ·conclude from the language which it used. The situation is well stated in Valentine v. Lamont, 13 N.J. 569, 100 A.2d 668, 672: "Where a statute authorizes the taking of a fee, it cannot be held invalid on the ground that a lesser interest only was required to accomplish the purpose the Legislature had in view. This is a legislative and not a judicial question."

Having determined that § 5513, RSMo 1909, authorized acquisition of fee simple title by defendant district, the question remaining is whether the district in fact sought to and did acquire such an interest in the rights-of-way acquired in the 1916 condemnation proceedings.

The original petition in condemnation in the 1916 suit apparently has been lost and could not be located by the parties. Hence, we cannot look to it to ascertain the interest which the district sought. They did, however, locate and introduce in evidence the commissioners' report and the judgment in condemnation.

Plaintiffs point out that the commissioners' report referred to "land necessary to be taken and used for such right-of-way and improvements." Also, the judgment of the court entered June 29, 1916, in every instance but one, used the term "right-of-way" in referring to that which the defendant district acquired. The one exception was where the judgment used the words "appropriated in whole." The use of the term "right-of-way," say plaintiffs, indicates an intention by the commissioners only to assess damages for a right-of-way interest in the land and an intention by the court to

grant only a right-of-way, and that common usage of the term "right-of-way" indicates an easement rather than a fee.

■ These contentions by plaintiffs, however, ignore other language used in the report and the judgment. We may not ignore this other language and limit ourselves to what the term "right-of-way," without more, might possibly mean. The fact is that both the commissioners' report and the decree in the condemnation recite that the full cash value of the land necessary to be taken was determined and awarded. In referring to the E. and C. Beall tracts, the judgment says, "and the lands shall pass from the said E. and C. Beall and be and are vested in the said Elsberry Drainage District subject to its use, employment and final disposition." Again, in a reference to the W. O. Gray tract, the judgment recited, "and the title of all of the above described tract of land is vested in the said Elsberry Drainage District subject to its use, profit and final disposition." Toward the end of the judgment, in referring to all tracts and after confirming the amounts awarded to the landowners, it says, "and when such amounts are paid, the title of said lands shall pass to the said Elsberry Drainage District."

These expressions do not indicate an intention to vest a mere easement in the district. Rather, they indicate an intention to transfer fee simple title, even though the words "fee simple" were not used. Obviously, it would have been preferable if those words had been employed. They would have simplified the problem and no doubt have avoided this litigation. The fact remains, however, as we have pointed out, that a fee simple title can be sought and transferred without use of these particular words, and we can and do determine that such was the intention and effect here. Plaintiffs have cited 30 C.J.S. Eminent Domain § 449, p. 623, as authority that only an easement was acquired, but the language of that section recognizes that the language of the statute and of the judgment, order

and other documents must be considered. The words "right-of-way" were used simply to indicate the purpose for which the district was acquiring the lands and not the extent of the interest being acquired.

As noted above, there was some variance in language used in the decree with respect to various tracts. This is not significant, however, because all were acquired for a single levee and the same interest in the land necessarily would be acquired with respect to all of the tracts. The variance indicates merely that the decree was not as carefully written as it might have been in order to make the language both uniform and crystal clear.

Plaintiffs cite the case of Ashurst v. Lohoefner, 170 Mo.App. 327, 156 S.W. 805, wherein the Kansas City Court of Appeals held that a landowner was not liable for treble damages to a contractor for cutting timber on the drainage district right-of-way originally acquired from the landowner.[3] Plaintiffs recognize that this was a county court drainage district, organized under another statute, but assert that the case indicates that a drainage district needs only an easement and that there should be no difference in the character of title acquired by a circuit court district and a county court district. There is nothing in the Ashurst opinion to indicate whether the drainage district had acquired the easement by condemnation or by deed, nor what kind of an interest had been sought, or how it was described in the decree or deed. The drainage district itself was not even a party to the suit. In the course of the opinion, the Court of Appeals makes the statement that the fee of land over which highways or streets are laid out remains in the owner, with an easement in the public, and they were therefore satisfied that when the landowner cut timber on the right-of-way, he would not be guilty under the trespass statute. Obviously, that opinion did not, and could not, undertake to determine title because jurisdiction of cases in-

volving title to real estate is vested exclusively in the Supreme Court. The case is not authority for a holding in this case that the defendant district herein acquired only an easement in the 1916 condemnation proceedings.

We have examined the other authorities cited by plaintiffs. We will not lengthen this opinion by analyzing them. We find nothing in those authorities to alter the conclusions we have reached.

The trial court assigned as an additional ground for its action that the plaintiffs were guilty of laches and were estopped from asserting any interest in the lands on which the levee was constructed, but in view of the conclusions we have reached, there is no occasion for us to consider that question.

The judgment is affirmed.

All of the Judges concur.

---

3. The contractor was digging a drainage ditch for the district and the latter had authorized use of standing timber for that purpose.