**STATE of Missouri, Respondent,**

v.

**Robert L. SWOBODA, Appellant.**

**No. 64604.**

Supreme Court of Missouri,
En Banc.

Oct. 18, 1983.

Edward J. Delworth, Overland, for appellant.

Honorable John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Robert Swoboda, charged with peace disturbance, section 574.010, RSMo 1979,[1] was convicted by the court and sentenced to pay a fine of $250 plus costs. He questions the constitutionality of the statute under which he was convicted and the sufficiency of the evidence to support the conviction. Because the Court holds that the statute is unconstitutional, it is unnecessary to address the question of sufficiency. Reversed.

On the afternoon of June 14, 1982, Mary Flerlage was hanging laundry in the backyard of her St. Louis County home. At about 1:00 p.m. she heard Robert Swoboda swearing loudly. He resided across the street from the front of Ms. Flerlage's home at the time of the events in question and does so today. Because the swearing continued for some twenty minutes, Ms. Flerlage called the police; they arrived and arrested the appellant. A trial followed at

---

1. See Appendix.

which the defendant claimed that the statute was unconstitutionally broad. The judge rejected this charge.

Appellant's claim that the statute is overbroad encompasses two kindred components: first, that the statute prohibits too much speech in that it prohibits certain substantive areas of speech that are not amenable to proscription; and second, that if the shouted words could have been unprotected "fighting words" if uttered under other circumstances, the circumstances under which they were actually uttered negated the essential elements of such words and thus cannot be punished under this statute. Respondent counters that the statute is constitutional because it prohibits only fighting words and the words used by Swoboda were fighting words.

■ The swearing in question contained the words "motherfucker," "cocksucker," and "going to knock your damn head off." Defendant does not claim to have communicated any ideology or political thought by his utterance of these unquestionably abusive words. His expletives are among the "lewd and obscene, profane, libelous and insulting" words that have been held not to raise any constitutional problems. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). This, however, does not prevent the appellant from challenging the statute's constitutionality.

Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute.

*Coates v. City of Cincinnati*, 402 U.S. 611, 619–620, 91 S.Ct. 1686, 1690–1691, 29 L.Ed.2d 214 (1971) (White, J., dissenting), cited with approval in *Gooding v. Wilson*, 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972).

The Supreme Court has held that a statute that prohibits both protected and unprotected activity is unconstitutional on its face. *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Plummer v. City of Columbus*, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973); *Gooding, supra*. But because virtually all statutes that purport to limit any personal expression can be seen as proscribing too much, the Supreme Court has permitted such statutes to stand only if they are construed in a limited fashion. *Gooding, supra*, 405 U.S. at 524, 92 S.Ct. at 1107. Following this rationale, Missouri courts have held that statutes abridging speech are constitutional to the extent that they prohibit only that speech which is likely to incite others to immediate violence. *City of St. Louis v. Tinker*, 542 S.W.2d 512 (Mo. banc 1976); *City of Kansas City v. Thorpe*, 499 S.W.2d 454 (Mo.1973). If section 574.010 is to stand, then, it too must be construed so as to prevent only such "fighting words."

In its present form, the statute prohibits a person from "unreasonably and knowingly" causing "alarm" by means of "loud and abusive language." § 574.010.1(1)(b). The proscription of "abusive" language conceivably embraces words that do not by their very utterance tend to incite violence. *Gooding, supra*, 405 U.S. at 525, 92 S.Ct. at 1107. One might easily unreasonably and knowingly alarm someone with abusive words and expressions considerably less opprobrious than those spoken by the defendant in this case. This statute as written can encompass virtually any expletive unreasonably and knowingly uttered at high volume and with high intensity, so long as a complainant is alarmed; vehement political discussion obviously contemplated by the first amendment could fall within the statute's proscription. A limiting construction is therefore necessary for the statute to be constitutional. Examination of the legislative history of this statute indicates, however, that such a construction as required by the Supreme Court would run counter to the intent of the legislature.

Section 574.010 was enacted as part of the new Criminal Code in 1977 to take effect in 1979. Section 562.240 immediately preceded section 574.010 and serves to illustrate the legislature's intent in enacting the new section:

*562.240. Disturbing the Peace*

If any person or persons shall willfully disturb the peace of any neighborhood, or of any family, or of any person, by loud and unusual noise or by offensive or indecent conversation, or by threatening, quarreling, challenging or fighting, every person so offending shall, upon conviction, be adjudged guilty of a misdemeanor.

The Comments to the 1973 Proposed Code, in which the present section 574.010 is explained, state that the new section seeks to prohibit "conduct . . . which alarms persons in the vicinity." The Comments also point out that "only one person need be alarmed." Finally, the Comments explicitly state that the phrase "abusive language" has been substituted for "indecent or offensive conversation." A change in a statute is intended to have some effect, and the legislature will not be charged with having done a meaningless act. *State ex rel. Thompson-Stearns-Roger v. Schaffner*, 489 S.W.2d 207 (Mo.1973). And what the legislature intended is to be concluded from the language which it used. *Bradley v. Elsberry Drainage Dist.*, 425 S.W.2d 950 (Mo.1968). A fair reading of these changes reveals that it was the legislature's intent to broaden the scope of prohibited speech and the circumstances under which such speech can be prevented. This becomes particularly apparent upon consideration of the second branch of the overbreadth argument.

The second and related element of overbreadth concerns the nature of "fighting words." The Supreme Court has held that such offensive language can be statutorily prohibited only if it is personally abusive, addressed in a face-to-face manner to a specific individual and uttered under circumstances such that the words have a direct tendency to cause an immediate violent response by a reasonable recipient. *See* Gard, Fighting Words as Free Speech, 58

Wash.U.L.Q. 531, 558–60, 580, (1980). In *Gooding, supra,* the Court stressed that such words must be likely to incite the reflexive response in the person to whom, individually, the remark is addressed. *Gooding, supra,* 405 U.S. at 523, 92 S.Ct. at 1106. Thirty years before, in *Chaplinsky, supra,* the Court upheld a fighting words conviction in large part because the statute had been construed to do "no more than prohibit the face-to-face words likely to cause a breach of the peace by the addressee . . . ." *Chaplinsky, supra,* 315 U.S. at 573, 62 S.Ct. at 770, quoting *State v. Chaplinsky,* 91 N.H. 310 at 321, 18 A.2d 754 at 762 (1941). But section 574.010 attempts to proscribe more than the Supreme Court's precedents permit.

The statute's impermissible breadth is illustrated by its attempt to prevent verbal disturbances initiated by one not physically on the same premises as the offended listener. § 574.010.1(1). The complainant need not be the addressee towards whom any impermissible speech may be directed. Under the statute he need only be "in the vicinity." But if this is the case, the statute seeks to punish more than face-to-face words. There is no better example of this conflict between the statute's directives and the limitations imposed by the Supreme Court than this case. Defendant's conduct took place entirely on his own property and was not in any way directed towards the complainant. Ms. Flerlage first heard defendant's words when she was in her backyard, completely out of sight and at quite a distance from the defendant. She went indoors for a time and then came out onto her front porch; defendant had been swearing throughout this period. His outbursts cannot be said to have been addressed towards Ms. Flerlage face-to-face, yet this is precisely what the Supreme Court requires. Thus, this statute proscribes too much. Taken together, the two branches of the overbreadth argument indicate that a limiting construction placed upon the statute would itself have to be so sweeping and contrary to legislative intent that it would

constitute a judicial attempt to redraft the statute. Hence, the statute must fall.

█ Although it would be implausible to say that the words used by the defendant are pleasant, desirable or acceptable to the reasonable addressee, they are by no means uncommon. They have been held to constitute an "everyday expression that punctuates everyday street language." *Stewart v. United States*, 428 F.Supp. 321, 323 (D.D.C. 1976). And although listeners may find such talk annoying, "it is highly doubtful that the government has much of a legitimate interest in punishment of 'name-calling' between private parties." *Tollett v. United States*, 485 F.2d 1087, 1093 (8th Cir. 1973). This being the case, a legislature that believes a legitimate interest is involved must fashion its statutes with increased precision and accuracy.

The judgment of the trial court is reversed.

WELLIVER, BLACKMAR, DONNELLY, JJ., and MORGAN, Senior Judge, concur.

RENDLEN, C.J., concurs in result.

GUNN, J., concurs in result in separate opinion filed.

BILLINGS, J., not sitting.

## APPENDIX

*574.010. Peace disturbance.*—1. A person commits the crime of peace disturbance if:

(1) He unreasonably and knowingly causes alarm to another person or persons not physically on the same premises by:

(a) Loud and unusual noise; or

(b) Loud and abusive language; or

(c) Threatening to commit a crime against any person; or

(d) Fighting; or

(e) Creating a noxious and offensive odor;

(2) He is in a public place or on private property of another without consent and unreasonably and knowingly causes alarm to another person or persons by:

(a) Loud and unusual noise; or

(b) Loud and abusive language; or

(c) Threatening to commit a crime against any person; or

(d) Fighting; or

(e) Creating a noxious and offensive odor;

(3) He is in a public place or on private property of another without consent and purposely causes inconvenience to another person or persons by unreasonably and physically obstructing:

(a) Vehicular or pedestrian traffic; or

(b) The free ingress or egress to or from public or private places.

2. Peace disturbance is a class B misdemeanor.

GUNN, Judge, concurring in result.

The blazingly obscene and foulmouthed utterances of the defendant in this instance are an absolute violation of § 574.01.1(b), RSMo 1978. And I have no doubt that the gutterbred comments showered forth for an elderly lady to absorb and endure were precisely the subject matter of legislative concern and for punishment—a seemingly legitimate interest for the General Assembly. *But see Tollett v. United States*, 485 F.2d 1087, 1093 (8th Cir.1973).

The terms brought forth were without any meaning of gentle affection or of good manners by any standard. No, indeed. The spoken word here to fall on a lady's ears was offensive, loud and grossly abusive by any consideration. Defendant's talk included the magic word which results in automatic ejection when spoken by a player, coach or manager in the presence of no less than the hardbitten arbiters of the major league baseball diamond. And it is difficult to consider defendant's expressions of low indecency as being "one man's lyric." *Tollett*, 485 F.2d at 1093.

So it appears that there was a clear violation of § 574.010.1(b)—the peace disturbance statute. And it does seem unjust that innocent parties are forced to bear

defendant's vulgar conduct so that he may have his freedom of expression. But, as discussed by the majority opinion, *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) severely restricts legislation against opprobrious, vulgar or abusive language to those instances of the so-called "fighting words" situations—which is obviously not the case here. Thus, I am constrained to concur in the overbreadth result reached by the majority.