CITY OF JACKSON, Missouri,
Plaintiff-Respondent,

v.

Jeffery L. OLIVER,
Defendant-Appellant.

No. 47990.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 30, 1984.

Kenneth L. Waldron, Jackson, for defendant-appellant.

Jack Harward Knowlan, Jr., Jackson, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Jeffery L. Oliver was found guilty in the municipal court of the City of Jackson of disorderly conduct in violation of city ordinance No. 1975. Upon trial de novo in the Circuit Court, he was again found guilty and sentenced to seven days in jail and fined two hundred fifty dollars. He appeals; we reverse.

On December 4, 1982, at about 4:45 a.m., Jackson policeman David Lukefahr responded to a call from Officer Bonney to investigate a red Camaro-type car which had nearly struck Officer Bonney while he was directing traffic around an automobile accident. Soon thereafter Officer Lukefahr stopped the vehicle on Highway 61 East in Jackson. The driver, Danny Wells,

and two passengers, defendant and Randall Wayne Gills, were in the vehicle.

As Officer Lukefahr placed Wells under arrest for careless and reckless driving, defendant, then somewhat intoxicated, called Lukefahr a "fucking pig." Lukefahr cautioned defendant not to repeat the epithet; otherwise, Lukefahr would be forced to arrest him. Defendant then raised his voice and called Lukefahr a "mother-fucking pig." Lukefahr then arrested defendant.

The ordinance in question provides: "It shall be unlawful for any person to be guilty of disorderly conduct. The causing or making of any unnecessary loud noise or shouting or yelling or uncooperative or unseemly behavior toward or in the presence of a police officer shall be considered disorderly conduct."

Accordingly, the amended information charged that on December 4, 1982, in the City of Jackson, the defendant did "unlawfully conduct himself in a disorderly and unseemly manner, in the presence of Officer Lukefahr by using loud, offense (sic) and unseemly language toward Officer Lukefahr the aforesaid officer."

Defendant claims that the ordinance is constitutionally infirm for a number of reasons. Because of our disposition of the case, we consider only one: that the ordinance is unconstitutional on its face because it prohibits both protected and unprotected activity.

In *State v. Swoboda,* 658 S.W.2d 24 (Mo. banc 1983), the court held § 574.010, RSMo 1979, unconstitutionally overbroad and reversed a conviction for peace disturbance thereunder. There, as in the instant case, the language used by the defendant was of the type clearly subject to legislative prohibition within constitutional limitations; yet the court held that the statute was defective on its face:

In its present form, the statute prohibits a person from "unreasonably and knowingly" causing "alarm" by means of "loud and abusive language." § 574.010.1(1)(b). The proscription of "abusive" language conceivably embraces words that do not by their very utterance tend to incite violence. *Gooding [v. Wilson], supra,* 405 U.S. [518] at 525, 92 S.Ct. [1103] at 1107, [31 L.Ed.2d 408]. One might easily unreasonably and knowingly alarm someone with abusive words and expressions considerably less opprobrious than those spoken by the defendant in this case. This statute as written can encompass virtually any expletive unreasonably and knowingly uttered at high volume and with high intensity, so long as a complainant is alarmed; vehement political discussion obviously contemplated by the first amendment could fall within the statute's proscription. A limiting construction is therefore necessary for the statute to be constitutional. *Id.,* 25.

Noting that the statute had been adopted in the form there under consideration in an obvious effort by the legislature "to broaden the scope of prohibited speech and the circumstances under which such speech can be prevented," the court determined that no limiting construction was possible, short of "a judicial attempt to redraft the statute." *Id.,* 26–27.

Similarly, if we were to attempt to construe the ordinance in this case to condemn only "fighting words" as that term was defined in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942), we would effectively be rewriting the ordinance to cause it to proscribe words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." There is no way that the phrase "unseemly behavior toward or in the presence of a police officer" in the ordinance can be so limited by judicial construction. The term "unseemly" is defined as "not according with established standards of good form or taste." Webster's Third New International Dictionary 2509 (3rd ed. 1981). An unending list of examples of utterances could be conjured up which do not comport with "good form or taste" but which are clearly protected by the First Amendment. As de-

scribed by Judge Gunn in his concurring opinion in *Swoboda,* the utterances here were "blazingly obscene and foulmouthed." Moreover, any possibility for compassion for this defendant must wane when viewed in light of the fact that he was not arrested the first time he addressed the officer; he was arrested only after the officer warned him not to repeat his statement and defendant did so in an even more reprehensible form.

■ Nevertheless, when a statute or ordinance regulating speech is susceptible of no apparent constitutionally acceptable construction, it must fall, even if the speech involved in a particular case could be properly proscribed by more narrowly drafted legislation. "This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding v. Wilson,* 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408, 413 (1972).

Aside from being patently artificial and contrary to the clear meaning of the words of the ordinance, any attempt to interpret it so as to apply only to "fighting words" would run directly counter to the holding of the Supreme Court of the United States in *Lewis v. New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974). That case involved a conviction for violation of a New Orleans city ordinance which declared it to be a breach of the peace for anyone "to curse or revile or to use obscene or opprobrious language toward or with reference to" a policeman. The United States Supreme Court had remanded the case to the Louisiana Supreme Court for reconsideration in light of *Gooding, supra.* Upon remand, the Louisiana court again affirmed, saying that it construed the words of the ordinance to proscribe only the "fighting words" of *Chaplinsky.* The United States Supreme Court reversed, saying:

> At the least, the proscription of the use of "opprobrious language," embraces words that do not "by their very utterance inflict injury or tend to incite an immediate breach of the peace." That was our conclusion as to the word "opprobrious" in the Georgia statute held unconstitutional in *Gooding v. Wilson,* where we found that the common dictionary definition of that term embraced words "conveying or intended to convey disgrace" and therefore that the term was not limited to words which "by their very utterance inflict injury or tend to incite an immediate breach of the peace." 405 U.S. at 525, [92 S.Ct. at 1107], 31 L.Ed.2d 408. The same conclusion is compelled as to the reach of the term in § 49-7, for we find nothing in the opinion of the Louisiana Supreme Court that makes any meaningful attempt to limit or properly define—as limited by *Chaplinsky* and *Gooding*—"opprobrious," or indeed any other term in § 49-7. In that circumstance it is immaterial whether the words appellant used might be punishable under a properly limited statute or ordinance. *Id.,* 415 U.S. at 133, 94 S.Ct. at 972, 39 L.Ed.2d at 219.

In short, "opprobrious language" does not undergo a linguistic metamorphosis to "fighting words" by judicial declaration. And we could not, by so construing the even broader phrase "unseemly behavior," convert it into a constitutionally permissible proscription. Thus, the ordinance must fall and, with it, defendant's conviction. In so holding, we are mindful of Mr. Justice Blackmun's dissent in *Lewis,* in which he warns against judicial usurpation of "the prerogative of democratic government" in striking down a statute or ordinance, "unless it parrots the wording of our opinions." *Lewis,* 415 U.S. at 140, 94 S.Ct. at 976, 39 L.Ed.2d at 223. Nevertheless, we are constrained to follow the course charted by the Supreme Court of the United States and the Supreme Court of Missouri.

Accordingly, the judgment is reversed.

CRIST, P.J., and GAERTNER, J., concur.